UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHAUN WEAVER,<br><br>   Plaintiff,<br><br> v.<br><br>WILL COUNTY SHERIFF MICHAEL KELLEY, et al.,<br><br>   Defendants. | No. 21 CV 203<br><br>Judge Manish S. Shah |

### MEMORANDUM OPINION AND ORDER

Plaintiff Shaun Weaver was held at the Will County jail while he awaited trial. He pled guilty and was sentenced to two years of imprisonment, to be served at 50%, with credit for the 364 days he had already served. But it took an additional forty-five days for Weaver to be released because the Will County jail was waiting for the Illinois Department of Corrections to send its calculation of Weaver's term of incarceration. Weaver sued the Will County Sheriff and IDOC representatives under § 1983 for violating of his constitutional rights by holding him beyond his sentence term. There is no § 1983 liability against the IDOC representatives because they were sued in their official capacity and there is no § 1983 liability against state officials sued in their official capacity. Summary judgment is also appropriate for Will County because its officers did not have the authority to calculate a sentence term, and therefore Weaver's continued incarceration was not the result of the County's policy or practices.

**I.     Legal Standards**

Summary judgment is warranted when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant receives the benefit of conflicting evidence and reasonable inferences but must "produce evidence sufficient to establish an element essential to [their] case on which they bear the burden of proof[.]" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *Jackson v. Sheriff of Winnebago Cnty.*, 74 F.4th 496, 500 (7th Cir. 2023).[1]

**II.    Facts**

Will County Sheriff Michael Kelley managed the Will County Adult Detention Facility and supervised its day-to-day operation. [93] ¶ 3.[2] The Will County jail was

---

[1] Weaver argues that "a nonmovant does not need to establish, show, or prove anything but must merely demonstrate that [a] genuine issue of material fact exists." [95] at 2 (citing *Sabol v. Walter Payton Coll. Preparatory High Sch.*, 804 F.Supp.2d 747, 750 n.2 (N.D. Ill. 2011)). But the non-moving party must show that there is sufficient evidence in the record, including a true dispute of fact, such that a reasonable jury could find in its favor on the issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.").

[2] Bracketed numbers refer to entries on the district court docket. The facts are largely taken from Weaver's and the Will County defendants' responses to Local Rule 56.1 statements of facts where both the asserted fact and response are set forth in one document. *See* [93], [98]. Referenced page numbers are taken from the CM/ECF header placed on the top of filings, except in the case of citations to depositions, which use the deposition transcript's original

not authorized to release inmates who have been sentenced, only the Illinois Department of Corrections had the authority to release sentenced inmates. [93] ¶ 5. Inmates sentenced to incarceration could not be released from custody until they were processed through the IDOC's system, including inmates sentenced to "time already served." [93] ¶¶ 6–7. Before March 2020, when a male inmate was sentenced by the Will County Circuit Court to incarceration, the Sheriff's office transported the sentenced inmate to the Northern Reception Center at the Stateville Correctional Center within five days of receiving the sentencing packet from the court clerk. [93] ¶ 8; *see also* [98] ¶¶ 58–59.

In response to the COVID-19 pandemic, the Governor of Illinois issued an executive order in late March 2020 suspending admissions from county jails to IDOC. [93] ¶ 9. From the date of the executive order until late July 2020, IDOC had a virtual intake process whereby county jails emailed copies of sentencing orders to a designated IDOC email address. [93] ¶ 10. IDOC used the sentencing orders to perform a "virtual intake" for the inmate while the inmate physically remained at the county jail. [93] ¶ 11. Part of IDOC's virtual intake process was the calculation of an

---

page number. I overrule Weaver's objections to statements of fact not used in a brief as irrelevant or immaterial. *See* [93] ¶¶ 1–4, 7–8, 10–11, 15, 17–18, 23–25, 27–28, 30–32, 35–36, 38, 40, 41, 43. There is no requirement that a party use all of their statements of fact in their brief. The Local Rule 56.1 statements of fact are the vehicle for getting facts into the record at summary judgment and are deemed admitted or excluded based on whether they adhere to the rules of evidence or are controverted by other admissible evidence, not whether they are used in the brief. The parties' statements and objections about who had authority to determine sentence term or calculate "out dates" are legal arguments and addressed in the body of this opinion. *See* [93] ¶¶ 13, 26 *and* [98] ¶¶ 47, 50, 60.

"out date" for the inmate, which IDOC would share with the county jail. [93] ¶ 12.[3] If the out date had already passed or was the same day that the county received the out date from IDOC, then the inmate was considered a "turnaround" or "dress in, dress out" transfer. [93] ¶ 14. During the four-month period in 2020 when county jails were not allowed to transport sentenced inmates to the Northern Reception Center, IDOC staff traveled to county jails and processed turnaround inmates for release; an inmate whose outdate was in the future would remain in custody at the county jail. [93] ¶¶ 15–16.

During this period, the Will County jail's warden assigned Lisa Kikkert, the inmate records supervisor, to transmit sentencing paperwork to IDOC, receive and track out dates from IDOC, and coordinate turnaround releases with IDOC. [93] ¶ 17; [98] ¶ 51. Kikkert's practice during this period was to send an email to IDOC every three or four business days attaching the sentencing orders that the jail had received.

---

[3] Plaintiff denies the County defendants' paragraph 12 on the basis that the county jails should know the out dates without receiving notice from the IDOC. [93] ¶ 12. To support his contention, plaintiff cites to Northern Reception Center Record Office supervisor Tammy Garcia's deposition testimony—"The time, the date will be in the past or that day. So they know who the turnarounds are and who they are not." [78-3] at 24:5–7. Nothing about that sentence supports the conclusion that a county jail "should know" a prisoner's out date. Furthermore, Garcia's testimony is part of her explanation of what happens when her office is sent a sentencing order: "A: The sentencing order is sent to the email that we [use to] process all the virtual in-take. And if there is five sentencing orders, five different individuals, we will calculate all of them and send the email back to the person who sent them giving them the out dates of all five individuals. Q: Okay. A: If one of those five individuals is a turnaround or a dress in or dress out, they will be notified of that as well. The time—the date will be in the past or that day. So they know who the turnarounds are and who they are not." [78-3] at 23:20–24:7. In context, Garcia's testimony is that her office—IDOC—calculates the out date and sends it to the county jail, and after the county jail receives the out date, the jail will know which prisoners are "turnaround." Plaintiff's objection is overruled.

[93] ¶ 18. On a few occasions Kikkert received an out date that had already passed and notified the warden to arrange for the inmate's release. [98] ¶ 52.

At the end of July 2020, the governor issued an executive order allowing county jails to transfer inmates to IDOC, subject to processing requirements determined by IDOC. [93] ¶ 19. The parties contest certain facts about these procedures, *see* [93] ¶¶ 20–22, but the details are immaterial because turnaround inmates were not subject to the date and number limits that applied to other inmates. [93] ¶ 25. Between the end of July 2020 and the end of 2020, IDOC continued to use the virtual intake process whereby county jails emailed sentencing orders to IDOC, IDOC calculated the out date, and notified the county jails of the out dates. [93] ¶ 23.[4] IDOC did not travel to the jails to process turnaround inmates; county jails could bring turnaround inmates to the Northern Reception Center at any time so long as they gave IDOC advance notice. [93] ¶¶ 24–25.

At the Will County jail, Kikkert continued to send sentencing orders to IDOC and track out dates received from IDOC. [93] ¶ 27. Kikkert kept a list of all inmates at the jail who had been sentenced to IDOC and were waiting to be transferred out; she updated the list each time she received an out date for an inmate. [93] ¶ 28. In late July and early August 2020, the jail had approximately 30 sentenced inmates

---

[4] Will County's objection to Weaver's assertion that "Inmates were brought to [Northern Reception Center] for processing and release after their outdate," is sustained. *See* [98] ¶ 60. The cited portion of the record does not support the assertion. IDOC Record Office Supervisor Garcia testified that "it could be possible even without COVID" that inmates were brought into the facility after their out date. *See* [78-3] at 27:17–24. Just because an event was possible does not mean that it occurred.

5

waiting to be transferred to the Northern Reception Center. [98] ¶ 61.[5] The jail's regular practice was to select inmates for transfer based on sentencing date, with inmates with the earliest sentencing date transferred first. [93] ¶ 29; [98] ¶ 53.[6] Nothing prevented county jails from transferring "turnaround" inmates to the Northern Reception Center because transport and release for turnaround inmates did not require a prior reservation. [98] ¶¶ 56–57.

Shaun Weaver entered a guilty plea in his criminal case and was sentenced to two years of incarceration on September 17, 2020. [93] ¶ 30. The judgment ordered the two years to be served at 50% under 730 ILCS 5/3-6-3. *See* [78-6] at 6. Weaver

---

[5] I sustain Will County's objection to the portion of Weaver's paragraph 61 that asserts that some of the thirty individuals in custody were held past their out dates. *See* [98] ¶ 61. The cited portion of the record does not support this assertion. Kikkert's declaration states that from March to August 2020, she received some out dates from IDOC that had already passed and when that happened, she immediately told the Warden and they arranged for IDOC to process the inmate for release. [78-4] ¶ 12. Then she states that in late July 2020 she was told transfers would begin again, and at that point in time, Will County jail had thirty sentenced inmates waiting to be transferred. [78-4] ¶¶ 13–14. The evidence in the record simply does not support the assertion that some of the thirty inmates had outdates that had passed. For the same reason I sustain the Will County's objection to paragraph 62 of Weaver's Local Rule 56.1 statement of fact. Weaver asserts that Will County "arranged for transfers there were not on inmates' outdates, but rather according to the chronology of out dates, some of which already passed." [98] ¶ 62. But the cited support is Kikkert's declaration that the Will County jail warden told her to transfer sentenced inmates "according to their sentencing dates, so the inmates with the oldest or earliest sentencing dates should be transferred first. From August 2020 through December 31, 2020, this sentencing criterion was applied whenever the [Will County jail] received approval to transfer inmates to the [Northern Reception Center]." [78-4] ¶ 15. There is nothing in those sentences to support the assertion that transfers were made based on the chronology of out dates or that some inmates' out dates had passed. Kikkert's declaration clearly states that the transfers were arranged according to chronology of *sentencing* dates and does not mention whether any inmates' out dates had passed. Weaver's counsel's imprecision with the evidence in the record is troubling and does not advance his client's cause.

[6] Will County's objection to paragraph 53 of Weaver's Local Rule 56.1 statement of facts is overruled because Will County asserted nearly the same fact, [93] ¶ 29, and the record supports the assertion. *See* [78-4] ¶ 15.

received credit for the 364 days he had already served and was "entitled to receive credit for the additional time Served in custody from the date of [the judgment] until defendant is received at the Illinois Department of Corrections." [78-6] at 6; [93] ¶ 30. The Will County jail received Weaver's sentencing packet from the Will County Court Clerk on September 20, 2020, and prepared the transfer form to be sent to IDOC. [93] ¶ 31.

Kikkert had been absent from work; she returned on September 29, 2020, and emailed Weaver's sentencing packet to IDOC. [93] ¶¶ 32–33; [98] ¶ 48. Included in the sentencing packet was the judgment order, which ordered Weaver's 2-year sentence, that he was to serve it at 50% pursuant to 730 ILCS 5/3-6-3, and that he was to receive credit for the 364 days he had already served. *See* [78-4] ¶ 19; [78-6] at 6.[7] On October 1, 2023, Kikkert emailed IDOC a list of Will County inmates who had not yet received their out dates; Weaver was included on the list. [93] ¶ 34. In the first week of October, Weaver submitted three request forms asking why he had not been released because he had served his sentence. [93] ¶ 35. Kikkert responded to Weaver's forms in writing stating that IDOC was responsible for calculating his out

---

[7] Weaver asserts that as of September 20, 2020, the Will County Sheriff's office was aware that Weaver's out date had passed, because it had received notice "that he was to be released on September 17, 2020, via the sentencing packet." [98] ¶ 47. Will County disputes the assertion on the basis that an out date had not yet been calculated by IDOC. *Id.* Ultimately, this is a legal debate masquerading as a factual conflict. I resolve the legal question of who has the authority to determine a sentence term in the body of the opinion. I include the facts that are supported by the record—Lisa Kikkert and the Will County jail had the judgment order that stated that Weaver was to serve a 2-year sentence at 50% and that he was to receive credit for time already served. *See* [78-6] at 6 (email Kikkert sent to IDOC email address with Weaver's sentencing packet, which included the judgment order).

7

date, his sentencing order had been sent to IDOC, and IDOC had not yet provided an out date. [93] ¶ 36.

Throughout October 2020, Kikkert sent emails to IDOC listing sentenced inmates at the Will County jail who had not yet received out dates; Weaver's name was included in those emails. [93] ¶¶ 37, 39. In her later email, Kikkert wrote that Weaver had "sent correspondence that he believes he should be out of custody-however we have not received his official outdate." [78-11] at 3. Weaver submitted three inmate request forms in late October because he was still incarcerated and believed that his sentence had been served. [93] ¶¶ 38, 40. A Will County jail sergeant responded by stating that Weaver was one of many inmates awaiting transfer to IDOC and that he would be transferred as soon as space was available. [93] ¶ 40. In total, Weaver sent seven inmate request forms stating that he had served his sentence because he had been sentenced to two years at 50% and he had already served 364 days as of the day of the judgment order. [98] ¶ 49; *see* [78-8] (inmate request forms dated October 1, 2, and 6); [78-10] (inmate request form dated October 10); [78-12] (inmate request forms dated October 23, 26, 26).[8]

---

[8] Will County objects to paragraph 49 of Weaver's Local Rule 56.1 statement of fact because the statement uses the term "out date" and Will County disputes that Weaver's out date had been determined. [98] ¶ 49. As discussed above, this is a legal argument about who has the authority to determine an out date or sentence term. The admissible evidence shows that Weaver sent seven inmate request forms; the forms are hard to read, but the legible portions indicate that Weaver wrote that he had been sentenced to two years at 50%, [78-8] at 4, he was to receive 364 days credit for time served, [78-12] at 2, and protesting that his rights were being violated and no one was responding. *See* [78-12] at 4, [78-8] at 3. I accept the facts supported by the inmate forms and exclude the legal conclusions.

On October 28, 2020, IDOC notified the Will County jail that five inmates could be transferred to the Northern Reception Center on November 4, 2020. [93] ¶ 41.[9] Kikkert suggested that Weaver be selected as one of the five inmates to be transferred even though other inmates had older sentencing dates, and the warden agreed. [98] ¶¶ 54–55; [93] ¶ 42. Weaver was transferred from the jail to the Northern Reception Center on November 4, 2020, even though the jail had not yet received Weaver's out date. [93] ¶¶ 43–44. After Weaver arrived at the Northern Reception Center, IDOC calculated his out date and then processed and released Weaver from custody. [93] ¶¶ 45–46.

### III. Analysis

#### A. Illinois Department of Corrections

Weaver brings a claim against Rob Jeffreys, David Gomez, Tammy Garcia, Caroline Hughes, and Leann Turner for violation of his substantive and procedural due process rights. [28] at 4. All five defendants were employees of the Illinois Department of Corrections during the relevant period, and the caption of the complaint as well as the prayer for relief state that the claims are brought against the defendants "in their official capacity." [28] at 1, 6. The count is labeled "Monell Policy/Substantive/Procedural Due Process Violations – IDOC Representatives." [28] at 4.

---

[9] IDOC allowed the Will County jail to transfer sentenced persons to the Northern Reception Center on October 1, 2020, October 30, 2020, and November 4, 2020. [98] ¶ 63.

9

Section 1983 provides a civil right of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District Columbia, subjects or causes to be subjected, any citizen of the United States … to [said deprivation] shall be liable to the party injured in an action at law, suit in equity, or other proceeding for redress." *Id*. The term "person" in the statute does not include states, so there is no cause of action under § 1983 against states. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–66, 71 (1989); *see also Jones v. Cummings*, 998 F.3d 782, 786 (7th Cir. 2021) ("The meaning of the word "person" in [§ 1983] tracks the same principles that underlie state sovereign immunity under the Eleventh Amendment … The Court in *Will* held that the Congress that passed section 1983 had no intention to disturb the States' Eleventh Amendment immunity and so it construed the statute to exclude the states from the class of those who could be sued under its terms.") (internal quotations omitted).

A suit against a state official in his or her official capacity is a suit against the state itself. *Will*, 491 U.S. at 71. For that reason, there is no cause of action under § 1983 against a state official acting in her official capacity. *Id*. Section 1983 suits against state officials acting in their official capacity "are outside the scope of the statute." *Jones*, 998 F.3d at 786 (where "statute" refers to § 1983).

The IDOC defendants argue that they are protected by the doctrine of sovereign immunity under the Eleventh Amendment. [87] at 4. The *Will* Court held

that a state is not subject to liability under § 1983 because it isn't a "person," not because the state is immune from liability under the Eleventh Amendment. *Will*, 491 U.S. at 71.[10] The Illinois Department of Corrections is an arm of the state of Illinois, so there is no § 1983 liability against IDOC officials sued in their official capacity. *See Owens v. Godinez*, 860 F.3d 434, 438 (7th Cir. 2017).

"[A] civil rights plaintiff must specify whether suit is brought against the defendant in his official capacity or in his individual capacity. This is not an insignificant distinction." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). Weaver specified in the caption of his complaint, in the preamble, and in the prayer for relief that he was suing the IDOC defendants in their official capacities. [28] at 1, 6. When there is uncertainty about whether a plaintiff sued a government defendant in their official or personal capacity, a court looks at the language of the complaint, the conduct alleged, and how the parties treated the suit, including the type of damages, to determine the nature of liability. *See Allen v. Dmitrijevic*, No. 23-1647, 2023 WL 8271937, at *2 (7th Cir. Nov. 30, 2023).

Weaver argues that his complaint's allegations against three of the IDOC defendants were enough to put those defendants on notice that he intended to sue them in their individual capacity. Weaver alleges that those three were "responsible

---

[10] The dissent in *Will* wrote, "Because this case was brought in state court, the Court concedes, the Eleventh Amendment is inapplicable here … Like the guest who would not leave, however, the Eleventh Amendment lurks everywhere in today's decision and, in truth, determines its outcome." *Id.*, 491 U.S. at 71–72. The majority opinion relies in part on the argument that when Congress wrote § 1983 (as Section 1 of the Civil Rights Act of 1871), it had the principle of sovereign immunity for states in mind and so it would not have written a statute to abrogate that principle without making its intention clear. *Id.* at 65–67.

11

for calculating Weaver's outdate, communicating the outdate to Will County [jail], and facilitating the transfer, processing, and release of Weaver individually, jointly, and in conjunction with [the other two IDOC defendants]." [28] ¶¶ 24–26. These allegations are about the roles those defendants played in IDOC's process, they do not alert the three defendants that Weaver is suing them in their individual capacity. *See Conner v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988) (finding that a request for "judgment against the defendants, individually and collectively" was inconclusive and looking to how the parties treated the suit, whether plaintiff asserted that defendants followed a policy or custom, and substitution of a defendant's estate to determine that plaintiff sought to impose personal liability).

Weaver's complaint states that the IDOC defendants were responsible for creating the policies and customs for calculating sentence term, [28] ¶ 28, he alleges that the defendants were acting within the scope of their employment, [28] ¶ 27, and does not describe any individual tortious behavior, all of which indicate the suit was brought against the IDOC defendants in their official capacities. *See Budd v. Motley*, 711 F.3d 840, 843 (7th Cir. 2013) (complaint seeking to impose liability on Sheriff for creating conditions at jail is description of a municipal practice or custom, not personal conduct, so plaintiff sued defendants in official capacity); *cf. Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (complaints about deliberate falsification of documents and disregard of inmate requests indicate suit brought

12

against defendants in their individual capacities).[11] Furthermore, the parties have thus far treated the suit as a suit against the IDOC defendants in their official capacity—plaintiff did not ask for punitive damages, nor did any of the defendants raise a qualified immunity defense as one might expect if the complaint was alleging personal liability on the part of the IDOC defendants. *See Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997). Weaver seeks compensatory damages, and while that could point to a personal capacity suit, the conduct at issue and the fact that Weaver listed the defendants as being sued in their official capacities override that inference. *See Allen*, 2023 WL 8271937, at *2. Given the language of the complaint, the conduct alleged, how the parties have treated the suit, and the nature of the damages sought, this suit is against the IDOC defendants in their official capacities. As such, there is no possibility of § 1983 liability against the IDOC defendants and summary judgment is appropriate.

Because the state is not a "person" under § 1983, it is not necessary to analyze whether IDOC "waived" Eleventh Amendment immunity. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002); *Parker v. Franklin Cnty. Cmty. Sch. Corp.*, 667 F.3d 910, 925–26 (7th Cir. 2012) ("We don't need to address state sovereign immunity

---

[11] The only evidence in the record that any of the IDOC defendants dealt personally with Weaver's case is the inmate release checklist signed by Tammy Garcia. *See* [78-22] at 2. This work also appears to be within the regular duties of her employment and is not evidence that she was independently devising a policy or custom regarding the calculation of out dates. *See Armstrong v. Squadrito*, 152 F.3d 567, 581 (7th Cir. 1998) (if there was evidence in the record that defendants had personally formulated deliberately indifferent policy, then individual liability might flow for Eighth Amendment claim, but without such evidence suit was against officials in their official capacity).

where we can resolve the issue by examining whether the defendants are 'persons' under § 1983."). If Weaver had brought another type of claim, such as a state-law claim, then Eleventh Amendment sovereign immunity would apply to protect the IDOC defendants. *See McDonough Assocs., Inc. v. Grunloh*, 722 F.3d 1043, 1049 (7th Cir. 2013). And, because Weaver did not request prospective injunctive relief, his suit does not fall into the *Ex parte Young* exception to Eleventh Amendment immunity. *Id.* at 1050–51.

Because § 1983 liability does not lie against a state or a state official sued in their official capacity and Weaver sued the IDOC defendants in their official capacity, judgment in favor of the IDOC is appropriate as a matter of law.

**B.    Will County**

Weaver's other claims are a § 1983 claim against the Will County Sheriff for violation of his substantive due process rights and an indemnification claim against Will County. [28] at 2–3. Municipalities and local government units are included in the definition of "people" covered by § 1983 so those governing bodies may "be sued directly under § 1983 for monetary, declaratory, or injunctive relief[.]" *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 690 (1978). The deprivation of civil rights must be the product of a policy or custom of the local government, the government cannot be held liable "for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. Section 1983 claims against a local government have three required elements: "(1) a municipal action, which can be an express policy, a widespread custom, or an act by an individual with policy-making authority; (2) culpability, meaning, at a

minimum, deliberate conduct; and (3) causation, which means the municipal action was the 'moving force' behind the constitutional injury." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019). The parties' arguments concentrate on whether Will County did or could have caused Weaver's injury.

To prove that a local government's action, policy, or custom caused the plaintiff's injury, the plaintiff must demonstrate that the action was the "moving force" behind the injury—"a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

Will County argues that only the IDOC can calculate the term of a sentence, and therefore Will County could not determine whether Weaver *had* served his sentence and was eligible to be transported to the Northern Reception Center as a turnaround inmate. Weaver's response is that Will County had his sentencing order, and that document contained sufficient information to know that Weaver's sentence had finished as of September 20, 2020, so the jail staff should have acted sooner to transport Weaver to the Northern Reception Center to be released.

An Illinois statute requires the IDOC to prescribe rules and regulations for awarding and revoking sentence credit. 730 ILCS 5/3-6-3(a)(1) (West 2020). The statute defines types of sentence credit and describes how those credits apply to different groups of inmates. *See* 730 ILCS 5/3-6-3(a)(1.5)–(3) (West 2020). Weaver's judgment order refers to 50%, [78-6] at 6, and cites Section 5/3-6-3; the only part of

15

that section that reduces a term by 50% is 730 ILCS 5/3-6.3(a)(2.1). The subsection reads "For all offenses … the rules and regulations shall provide that a prisoner who is serving a term of imprisonment shall receive one day of sentence credit for each day of his or her sentence of imprisonment or commitment under Section 3-3-9. Each day of sentence credit shall reduce by one day the prisoner's period of imprisonment or recommitment under Section 3-3-9." *Id*. This amounts to an automatic 50% diminution of applicable felony sentences.

Subchapter A, Part 107 of the Illinois Administrative Code, which deals with offenders' records, contains regulations about calculating a sentence term. The subpart titled "Diminution of Felony Sentences," states "[a]n offender serving a determinate sentence shall be released after serving his or her determinate sentence, less any applicable credit awarded or earned in accordance with this Part." 20 Ill. Adm. Code § 107.110(c). Sentence credit "may be revoked at the discretion of the Director, or his or designee" if an offender "is found guilty of misconduct or violating departmental rules or the terms of parole or mandatory supervised release[.]" 20 Ill. Adm. Code § 107.150(c), (a).[12]

Putting these two sections together, a sentence term is determined by reducing the length of time to which the inmate was sentenced by the sentence credit the

---

[12] Will County cites 20 Ill. Adm. Code §§ 107.210(c), 107.205, but does not explain how that subpart, titled "Meritorious Good Time, Supplemental Sentence Credit, and Earned Discretionary Sentence Credit," applies to the "Statutory Sentence Credit" that Weaver received. *See* 20 Ill. Adm. Code § 107.107 (defining "statutory sentence credit" as award of time under 730 ILCS 5/3-6-3(a)(2.1)); 20 Ill. Adm. Code § 107.207 (defining meritorious good time, supplemental sentence credit, and earned discretionary sentence credit, none of which include statutory sentence credit); 20 Ill. Adm. Code. § 107.210(c) (about awarding earned discretionary sentence credit).

16

inmate has earned or been awarded. The Director of IDOC has the authority to revoke sentence credit for misconduct and there is no evidence in the record that the Director designated the power to revoke sentence credit to any other body. Will County's principal argument on summary judgment is that it could not determine whether Weaver was a turnaround inmate because it could not calculate his sentence term. Weaver has not supplied any authority for the proposition that Will County had the power to calculate a sentence term. The Illinois statute and regulations provide that, as a matter of law, only IDOC had the authority to calculate the term of a sentence because only IDOC could determine whether sentence credit had been revoked, which was necessary to the final determination of the sentence term. Although there is no evidence that Weaver had been found guilty of any misconduct or violated any departmental rules, IDOC nevertheless retained the sole legal authority to determine whether any revocation applied to Weaver; it was not within Will County's power to calculate an official out date for Weaver.

Causation is a necessary element of a § 1983 claim against local government unit. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 379 (7th Cir. 2017). Will County could not know with certainty whether Weaver was a turnaround inmate who could be taken to the Norther Reception Center until Weaver's sentence term was calculated. Will County's Kikkert repeatedly alerted IDOC to Weaver's sentence and nothing in the record suggests the county did anything to delay or deter IDOC from calculating Weaver's out date. No policy or practice of the county caused Weaver's

17

injury or evinced a reckless disregard for the need to administer Weaver's sentence lawfully.[13] The county's motion for summary judgment is granted.

## IV. Conclusion

Defendants' motions for summary judgment, [85] and [76], are granted. Enter judgment in favor of defendants and terminate civil case.

ENTER:

                                                      Manish S. Shah
                                                    United States District Judge

Date: December 15, 2023

---

[13] Weaver's complaint alleges that his delayed release violated due process, but being held beyond a term of incarceration is ordinarily assessed under the Eighth Amendment. *See Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016) ("Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference."); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process). The parties assumed that a constitutional injury occurred and briefed only whether the state defendants could be liable in their official capacity under Section 1983 and whether the county defendants were responsible for the assumed injury under *Monell*. But there is no evidence in the record suggesting that anyone at the county was deliberately indifferent to Weaver's sentence (for example, any evidence that Kikkert or the warden did not genuinely believe that they could not release Weaver without an IDOC calculation)—a necessary predicate to any Eighth Amendment violation.